NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of:

CORNER STONE LAND TRUST

SAMUEL SEMILIA, *Petitioner/Appellee*,

*v.*

CYNTHIA SEMILIA, *Respondent/Appellant*,

*and*

SUNDAY SEMILIA, et al., *Respondents/Appellees*,

*and*

L. PAUL MCINTYRE, *Appellee*.

No. 1 CA-CV 23-0354
FILED 2-8-2024

Appeal from the Superior Court in Maricopa County
No. PB2022-001235
The Honorable Melody G. Harmon, Judge

**AFFIRMED**

COUNSEL

Erika M. Weiler, Attorney at Law, Scottsdale
By Erika M. Weiler
*Counsel for Petitioner/Appellee*

Provident Law, Scottsdale
By Mary T. Hone
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer B. Campbell joined.

**B R O W N**, Judge:

¶1 Cynthia Semilia ("Wife") appeals the probate court's order granting summary judgment in favor of her ex-husband Samuel Semilia ("Husband") on various disputes about the validity of a trust. Because the court did not err, we affirm.

**BACKGROUND**

¶2 While living in Virginia in 1997, Husband and Wife created the Corner Stone Land Trust ("the Trust"). The declaration of trust stated that the Trust was an "irrevocable complex trust," but was also in the form of a "pure trust." The initial trustees were L. Paul McIntyre (Wife's father) and Ronald Swonger. The couple's four children were listed as beneficiaries, and each of them were allocated 25 units of beneficial interest; McIntyre was allocated 100 units.[1] The Board of Trustees ("Board") later agreed the children would become eligible to serve as trustees once they

---

[1] The Trust contemplated there would be "at least on[e] passive holder" of units of beneficial interest. Wife does not dispute that McIntyre served in that role.

were of age, depending on their "competence, experience, and business understanding."

¶3            In 2001, Husband and Wife bought a home in Phoenix, which they placed in the Trust, and the Board changed the Trust's address to that property a year later.  In 2005, Swonger died and was replaced as a trustee by Lorraine Bell (Husband's sister) the following year, but otherwise the Trust and property remained undisturbed until 2014 when Wife and Husband divorced.  During the dissolution proceeding, the family court determined it could not award either party the home because it belonged to the Trust and suggested their dispute would have to be resolved in probate court. Wife continued to live in the home after entry of the divorce decree and was responsible for maintenance and taxes.  By at least 2014, McIntyre no longer attended Board meetings as a trustee and did not sign the minutes for Board meetings.  At two Board meetings, the couple's two children born after the Trust's creation were added as beneficiaries, and the four children initially named as beneficiaries were added as trustees.

¶4            Despite his apparent lack of involvement with the Trust for several years, in December 2017 McIntyre executed a warranty deed ("the Deed") purporting to transfer the home from the Trust to Husband and Wife, recognizing they were no longer married.   In 2018, the trustees determined that McIntyre "ha[d] refused to participate in annual Trust Meetings" since 2014, that he had "conspired with [Wife]" to remove the home from the Trust, and that McIntyre would be removed as a trustee and his units of beneficial interest (as a passive holder) would be held by Bell.

¶5            Husband petitioned the probate court to declare that the 2017 property transfer was void, that McIntyre was only a passive interest holder in the Trust property, and that he was no longer a trustee.  Alternatively, Husband sought to remove McIntyre as a trustee.  Both Wife and McIntyre, who were self-represented, opposed the petition.  Wife claimed that the Trust's designation as a "pure trust" showed that the Trust was created to avoid tax obligations.  Wife then filed a cross-petition, asking the court to declare the Trust void as a fraudulent alter ego of Husband and to equitably divide the home. Wife alleged that for more than seven years she was solely responsible for the home, and that Husband was seeking to deprive her from the benefits from their community property. But Wife did not request an initial hearing on her cross-petition as required by Arizona Rule of Probate Procedure ("Probate Rule") 15(c), and the probate court took no action on it for nearly a year.

¶6            A few months after Wife filed her cross-petition, Husband moved for summary judgment on his petition.  Wife and McIntyre responded by submitting a memorandum opposing summary judgment. The filing contained a "Statement of Facts" consisting of a single paragraph which cited no evidence in the record, though the filing included a list of exhibits Wife believed "may be relevant in this matter."  Wife did not file a controverting statement of facts as required by Arizona Rule of Civil Procedure ("Rule") 56(c)(3), nor did she specifically respond to the facts included in Husband's statement of facts.

¶7            The probate court granted Husband's motion.  Relying on Rule 56(e), the court deemed Husband's statement of facts as admitted, as Wife "did not submit a controverting statement of facts, nor affidavits or evidence to support their propounded facts."  The court also found that the Trust was valid under Arizona law, the Deed was void, that McIntyre had only a passive beneficial interest in the Trust property, and that he was appropriately removed as a co-trustee at the 2018 Board meeting.

¶8            Wife then hired legal counsel, who moved to vacate the court's ruling.  Wife argued that entry of summary judgment effectively denied her cross-petition, which had yet to be addressed or dismissed, without providing her an opportunity for a hearing.  Wife also argued the court erred by deeming Husband's facts as admitted, while ignoring evidence she presented which demonstrated there were genuine disputes of material fact.  The court denied Wife's motion and, after entry of a partial final judgment, she timely appealed.[2]  We have jurisdiction under A.R.S. § 12-2101(A)(1) and (9).

## DISCUSSION

### I.    Due Process

¶9            By ruling on Husband's summary judgment motion and expressly declining to consider her cross-petition, Wife argues the probate court effectively denied her cross-petition without giving her a meaningful opportunity to be heard.  *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).

---

[2]        In the order denying Wife's motion to vacate, the probate court also noted that she still had not requested an initial hearing on her cross-petition, and that it would be dismissed within 30 days from the order.  Nearly a month later, Wife requested an initial hearing, and the court stayed any further action on the cross-petition pending resolution of this appeal.

We review claims of denial of procedural due process de novo. *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, 355, ¶¶ 16–17 (App. 2006).

**¶10**	According to Wife, the court never allowed her to present evidence or sworn testimony in defense of her claims before entering judgment against her. However, she fails to acknowledge that her own inaction prevented her from obtaining a hearing. Probate Rule 15(c) states that "*[t]he petitioner* must obtain from the court a date, time, and location for an initial hearing on [a] petition," and that failure to obtain such a hearing "may result in dismissal of the petition." (Emphasis added.) The cross-petition was not dismissed under Probate Rule 18, and there was nothing preventing Wife from requesting an initial hearing on her cross-petition.

**¶11**	Moreover, Wife had opportunities to present relevant evidence and testimony in responding to Husband's petition and motion for summary judgment. A party who has the opportunity to be heard and fails to exercise it cannot later claim they were denied due process. *Watahomigie v. Ariz. Bd. of Water Quality Appeals*, 181 Ariz. 20, 27 (App. 1994). This is true for both parties represented by counsel and those, like Wife here, who are self-represented. Wife has not shown she was denied due process.

## II.	Summary Judgment

### A.	Genuine Disputes of Material Fact

**¶12**	Wife argues the court erred in granting summary judgment because it ignored the facts she presented. She contends the court needed to consider all her filings, and the facts she presented show there are several material factual disputes that could not be resolved by summary judgment. We review the court's grant of summary judgment de novo. *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 447, ¶ 23 (App. 2017).

**¶13**	As noted more than 40 years ago by the Arizona Supreme Court, a court has no duty to independently review the entire record to try to seek out disputed issues of material fact. *See Mast v. Standard Oil Co. of Cal.*, 140 Ariz. 1, 2 (1984) ("It is also the policy of the court that neither we, the trial court, nor the court of appeals should be required to perform counsel's work by searching the record to attempt to discover facts which establish or defeat the motion."). Moreover, nothing that Wife or McIntyre filed with the court would have provided sufficient evidence to create any genuine issue of material fact.

¶14 Wife contends that her opposition to Husband's petition and her cross-petition are the equivalent of affidavits, or a controverting statement of facts, because she verified that they were "true to the best of her knowledge." Setting aside whether the filings meet the requirements of an affidavit under Rule 56(c)(5), the plain text of Rule 56(e) forecloses Wife's attempt to convert them into affidavits. After a party properly moves for summary judgment,

> an opposing party *may not rely merely on allegations or denials of its own pleading*. The opposing party must, by affidavits or as otherwise provided in this rule, set forth specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment, if appropriate, shall be entered against that party.

Ariz. R. Civ. P. 56(e) (emphasis added). The rule is clear: A party's allegations are insufficient to rebut summary judgment. Allowing Wife's filings to stand in as de facto affidavits would require either a contradictory interpretation of Rule 56(e) or a complete disregard for the clause prohibiting a party from relying solely on their own pleadings. We cannot embrace either construction. *See Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195, ¶ 9 (2016) (explaining that courts "seek to . . . avoid interpretations that result in contradictory provisions"); *State v. Aguilar*, 209 Ariz. 40, 47, ¶ 23 (2004) (noting that principles of statutory construction also apply to court rules).

¶15 Because Wife failed to submit a controverting statement of facts with numbered paragraphs responding to Husband's statement, her memorandum opposing summary judgment failed to create a genuine dispute of material fact under Rule 56(c)(3).[3] Wife's memorandum, which included only a brief paragraph titled "Statement of Facts," contained no citations to any portion of the record she relied on. Though she did attach several exhibits, emails, text messages, home valuations, trustee meeting minutes, and documents discussing the validity of "pure trusts," she stated only that she believed the exhibits "may be relevant in this matter." Nothing she presented would have rebutted Husband's Statement of Facts. Because Wife did not properly respond to Husband's motion for summary judgment as required under Rule 56(e), and because the exhibits she

---

[3] Wife also suggests that her cross-petition was "a verified controverting statement of facts" because it had "separately numbered paragraphs." But Wife does not explain how the cross-petition could controvert a document Husband had not yet filed.

provided do not create a genuine issue of material fact, the probate court correctly based its summary judgment ruling on the facts Husband presented. *See Choisser v. State ex rel. Herman*, 12 Ariz. App. 259, 261 (App. 1970) ("[A]n adverse party who fails to respond [to a motion for summary judgment] does so at his peril because uncontroverted evidence favorable to the movant, and from which only one inference can be drawn, will be presumed to be true.").

### B.      Entitlement to Judgment as a Matter of Law

**¶16**        Wife's failure to properly oppose Husband's motion, by itself, did not require the court to award him summary judgment. *See Schwab v. Ames Constr.*, 207 Ariz. 56, 59, ¶ 15 (App. 2004) ("A failure to respond to a motion for summary judgment with a written memorandum or opposing affidavits cannot, by itself, entitle the moving party to summary judgment."). Summary judgment is still a final judgment on the merits, *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 13 (App. 2009), and the moving party must carry their burden of showing no genuine disputes of material fact and entitlement to judgment as a matter of law, Ariz. R. Civ. P. 56(a).

**¶17**        Wife contends the court ignored genuine disputes of material fact. She claims the Trust was an alter ego of Husband and was created as a result of undue influence. However, both claims arise solely from allegations contained in Wife's filings, with no link to evidence in the record. As to the alter ego claim, Wife first raised it in opposition to Husband's petition. She claimed that Husband's use of a kit from a "tax protestor" was proof he intended the Trust to be a tax shelter, and because he prepared the meeting minutes every year for the trustees to sign, it was proof that he controlled the property. She repeated these points verbatim in her opposition to summary judgment but did not provide any record evidence in support of those allegations. Likewise, the only "evidence" Wife provided about undue influence was assertions that Husband used "extreme pressure" and false promises to persuade her and McIntyre to become involved with the Trust. These vague assertions, raised more than 20 years after formation of the Trust, lack any factual support in the record. Thus, they create no genuine dispute as to any material fact.

**¶18**        Wife also claims that Husband did not establish a factual basis on whether the Trust was established for a lawful purpose, asserting that statements in Husband's own declarations on the point were "self-serving"

and "conclusory."[4]   Affidavits "that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) (noting also that self-serving assertions lacking factual support are not enough to defeat summary judgment).   But the statements Wife takes issue with are neither conclusory nor devoid of factual support.   Husband's declaration states that the Trust was created "for the protection of our property and to leave any property to our children."   The declaration of trust corroborates this statement, as the couple's children were named as beneficiaries, and upon termination of the Trust, its assets would be allocated among the beneficiaries.   Husband's statements are not conclusory; nor are they void of support in the record.

**¶19**          In granting Husband's motion, the probate court relied on several tax documents, submitted with a supplemental statement of facts attached to his reply, to support his position that the Trust did not have any illicit tax-related purposes.   Husband provided documentation from the Internal Revenue Service showing he did not obtain an Employer Identification Number for the Trust until 2018.   He also avowed that tax returns for the Trust were subsequently filed.   But Wife fails to show how the delayed filing of tax returns—for an entity that had generated no income—or the failure to timely obtain an EIN means that the Trust is void or otherwise unenforceable.   Evidence that provides only a scintilla of doubt as to asserted facts is not enough to defeat summary judgment. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

**¶20**          Finally, Wife challenges whether the couple's children, who agreed to remove McIntyre at the 2018 Board meeting, were properly appointed as trustees.   She points to the Trust's declaration, which states that "no Beneficiary, *as such*, shall be empowered to control the TRUSTEES in any way or dictate management or investment policies to the Trust, or determine the disbursement of Trust income or corpus."   (Emphasis added.)   In her reading, this language prevents beneficiaries from serving as trustees in any capacity.   But the Trust only prevents beneficiaries, when acting in that role, from exerting control over trustees.   It does not prevent

---

[4]      Wife argues the Trust was invalid because she could not notarize the document under Virginia law and there was an insufficient quorum at the Board meeting at which the couple's children became trustees.   She also questions whether the funds from the sale of property in Virginia were properly used to buy the Arizona home.   These arguments are waived because Wife did not raise them in this court until her reply brief. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007).

beneficiaries from serving as trustees. Finally, even if the children were prohibited from serving as trustees, Wife has not offered any explanation why that would render the Trust void or unenforceable, or otherwise disqualify the children from exercising their rights as beneficiaries under the Trust.

## CONCLUSION

**¶21** We affirm the probate court's grant of summary judgment and denial of Wife's motion to vacate. We deny Husband's request for attorneys' fees, made pursuant to A.R.S. § 14-11004, because the statute limits recovery of fees to "[a] trustee or a person who is nominated as a trustee." As the successful party on appeal, Husband is awarded taxable costs subject to compliance with ARCAP 21.

